**In re OXFORD ROYAL MUSHROOM PRODUCTS, INC., Debtor.**

**Bankruptcy No. 81--02434G.**

United States Bankruptcy Court, E. D. Pennsylvania.

Jan. 21, 1985.

78

Robert H. Levin, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., Trustee/movant.

Nathan Lavine, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for trustee/movant.

J. Clayton Undercofler, III, Michael L. Krancer, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for Alfred Fortugno, respondent.

William T. Windsor, Jr., Saul, Ewing, Remick & Saul, Philadelphia, Pa., for debtor, Oxford Royal Mushroom Products, Inc.

Lawrence J. Lichtenstein, Mesirov, Gelman, Jaffe, Cramer & Jamieson, and Allen B. Dubroff, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for the Creditors' Committee.

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2.        Rule 2004. Examination

(a) EXAMINATION ON MOTION. On motion of any party in interest, the court may order the examination of any person.

(b) SCOPE OF EXAMINATION. The examination of any person under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In an individual's debt adjustment case under chapter 13 or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The issue before us is whether we should grant the trustee's motion for an order directing the former president of a corporate debtor to submit to an examination under Bankruptcy Rule 2004 without benefit of the Fifth Amendment privilege against self incrimination. For the reasons stated herein we will grant the motion.

■■■ The facts of this case are as follows:[1] The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") and a trustee was subsequently appointed. The trustee's investigations of the debtor's affairs revealed that it issued 77 checks to one "P. Turner" in amounts totaling $554,603.00. Based on the limited information he has been able to gather, the trustee suspects that P. Turner is a fictitious individual created by the debtor's former president, Alfred Fortugno ("Fortugno"), for the purpose of siphoning funds from the corporation. To gain further information on this possible diversion of funds the trustee subjected Fortugno to examination under Bankruptcy Rule 2004[2] on May 29, 1984. During this hearing Fortugno testified on the points which are outlined below.[3] The

therefor, and any other matter relevant to the case or to the formulation of a plan.
   *    *    *    *    *    *
Bankruptcy Rule 2004 (in part).

3. Fortugno's testimony was summarized in the brief filed in his behalf as follows:
  1. That [Fortugno] had met P. Turner on several occasions at the Debtor's plant and at the Avondale Diner.
  2. That P. Turner would call Fortugno and ask to have his checks cashed by the Debtor.
  3. That [Fortugno] would arrange for the foregoing to be done for P. Turner.
  4. That [Fortugno] would give P. Turner's checks to Joe [Biondi] to take to the bank to be cashed.
  5. That the proceeds from the checks were given [by Joe] to Fortugno.
  6. That the proceeds were given [by Fortugno] to P. Turner at the Debtor's plant.
  7. That [Fortugno] and no one else gave Turner the proceeds of the checks.
Fortugno's Brief, p. 2 (page references to the notes of testimony have been omitted).

hearing was continued to July 3, but on that date Fortugno refused to answer all questions, except his name and address, citing his privilege against self-incrimination under the Fifth Amendment of the United States Constitution.[4]

Shortly after Fortugno's refusal to answer questions (except his name and address) at his hearing the trustee filed the motion currently under consideration in which he sought an order directing Fortugno to submit to an examination under Rule 2004 without the benefit of the Fifth Amendment privilege against self incrimination. The trustee claims that relief on his motion may properly be granted under the authority of *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

In *Rogers* the Supreme Court held that once a witness makes an incriminating admission he or she cannot stop testifying by claiming the Fifth Amendment privilege and may not refuse to disclose details unless such further disclosure would pose a real danger of further incrimination. In that case a grand jury had been seeking the books and records of the Communist Party of Denver. The witness appeared and admitted having been treasurer of that branch of the party. She denied having possession of membership lists and dues records and stated that she had turned these items over to another person. But she refused, on Fifth Amendment grounds, to name that person. She was convicted of contempt when her Fifth Amendment claim was overruled.

On appeal, the Supreme Court held that her admission of party membership was, in itself, an incriminating fact, and that her answering the subsequent question about other party members presented only an imaginary possibility of further incrimination to her. The Court noted that she could not claim the privilege on behalf of other

individuals. Speaking for the Court, Chief Justice Vinson stated as follows:

> If petitioner desired the protection of the privilege against self-incrimination, she was required to claim it. The privilege is deemed waived unless invoked.... Although the claim was made at the time of her second refusal to answer in the presence of the court, it came only after she had voluntarily testified to her status as an officer of the Communist Party of Denver. To uphold a claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony.... Since the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure, petitioner" cannot invoke the privilege where response to the specific question in issue here would not further incriminate her. Disclosure of a fact waives the privilege as to details.... [The] federal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details.... When petitioner was asked to furnish the name of the person to whom she turned over Party records, the court was required to determine, as it must whenever the privilege is claimed, whether the question presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures. As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a "real danger" of further crimination.

340 U.S. at 370–74, 71 S.Ct. at 440–42 (citations, footnotes and quotes omitted). Under the authority of *Rogers* we hold that Fortugno may not claim the Fifth Amendment privilege to refrain from answering questions on the details of his dealings

---

**4.** "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const., Amend. V. This right may, of course, be asserted in any civil proceeding where there is a reasonable apprehension of criminal prosecution. *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924).

with "P. Turner" after having voluntarily admitted his involvement with that individual.

We will accordingly enter an order granting the trustee's motion.