**In re Thomas J. CONNELLY, Debtor.**

**No. 84 B 2020.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 27, 1986 (As Corrected
and Reissued).

Abraham Brustein, Dozoryst, Cosby & Brustein, Chicago, Ill., for debtor.

Lawrence M. Cooper, Cooper & Cooper, Ltd., Chicago, Ill., trustee.

Dean Harvalis, Chicago, Ill., U.S. trustee.

## MEMORANDUM OPINION AS TO FIFTH AMENDMENT ISSUES AND ORDER THEREON

### (As Corrected and Reissued)

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtor, Thomas J. Connelly ("Connelly"), filed his petition herein under Chapter 7 of the Bankruptcy Code. He then invoked the Fifth Amendment to the United States Constitution and refused on that ground to testify or otherwise disclose any information at all pertaining to his case. He responded to each question on the schedules with that assertion. Likewise, each substantive question calling for his sworn testimony was met by the same assertion. He responded likewise to each question posed at the creditors meeting. In fact, he only gave three bits of information: his name, address, and social security number. Connelly requested immunity but the United States Attorney declined, possibly because debtor may be under investigation. Connelly filed a matrix with the Clerk of the Court listing the names of parties entitled to notice, but he has declined on Fifth Amendment grounds to fill out the forms to schedule creditors and debtors or to an-

swer questions about the matrix list. He has turned over no records or property to the trustee for the same asserted reason.

The trustee argues that because of the foregoing he cannot possibly administer this estate. He moved to dismiss the case for debtor's refusal to perform his several duties under the Bankruptcy Code. The issues posed by this situation are: (1) Whether Connelly has properly asserted the Fifth Amendment privilege in these proceedings; (2) the scope of that privilege, if properly asserted, as to testimony, bankruptcy schedules, information recorded in documents, and the turnover of property of the estate; and, (3) the appropriate procedures and remedies available when a trustee in bankruptcy is confronted with a debtor making such a blanket assertion of that privilege.

Debtor moved for an order under Bankruptcy Code § 521 declaring that if he complies with Trustee's requests (for information, documents, and property turnover) he will not thereby waive his Fifth Amendment rights.

For reasons set forth below at length, at the end of this opinion debtor's motion under Code § 521 for a declaration of his Fifth Amendment rights will be denied; the Trustee's Motion to Dismiss will be held in abeyance until it is ripe for decision; and various specified disclosures, actions, and explanations by the debtor will be ordered. The results of the latter order will determine the ultimate ruling on Trustee's Motion to Dismiss.

## I. FACTS

Connelly filed his voluntary Chapter 7 case here on February 16, 1984. The petition disclosed only his name, social security number and post office address. No creditors or debtors were listed in the sworn petition. However, an unverified matrix consisting of a three-page list of parties entitled to notice was attached. Therefore, the Clerk was able to send out notices to those parties regarding such matters as the first meeting of creditors and the last day for filing objections to discharge.

The first meeting of creditors was originally set for April 26, 1984. By letter dated April 5, 1984, Connelly's attorneys advised the United States Trustee that he would exercise his rights under the Fifth Amendment, and would not testify, submit to examination, or provide information, until granted immunity as provided by Title 11 U.S.C. § 344 and Title 18 U.S.C. § 6001 et seq.

On August 6, 1984, Marguerite Butler, interim trustee, moved to dismiss Connelly's case for his failure to file schedules and a statement of affairs. A rule to show cause why the case should not be dismissed was entered and continued to various dates through and including April 1, 1985.

On August 15, 1984, Connelly's attorneys formally asked the U.S. Attorney for a grant of immunity for Connelly pursuant to 11 U.S.C. § 344 and 18 U.S.C. § 6001 et seq. The letter stated Connelly believed various federal agencies, including the F.B.I., the Justice Department, the S.E.C. and the F.D.I.C. may have investigations pending or which have been completed within the past five years. No reasons were stated therein as a basis for such apprehension, nor have reasons therefore been advanced to this Court.

On August 27, 1984, the Bankruptcy Court granted Connelly a protective order extending his time to file schedules until October 1, 1984.

By letter dated October 17, 1984, Phillip A. Turner, Assistant United States Attorney, advised Abraham Brustein, counsel for Connelly, that the United States Attorney would not seek an immunity order for his client under the Bankruptcy Code. Connelly's counsel have represented their belief that debtor is under investigation by the United States Attorney. While no basis for that assertion has been placed on the record here, some accusations of wrongdoing were made against this debtor by private parties in the bankruptcy proceeding of Churchfield Management & Investment Corporation ("Churchfield") (Case No. 84 B 7409) pending before this

Court. Connelly had management involvement with Churchfield that lead to such accusations.

Lawrence Cooper became trustee of the estate of Thomas Connelly on March 4, 1985. Since debtor continued to adhere to his assertion of Fifth Amendment privilege, on March 19, 1985, trustee moved for a Rule to Show Cause why Connelly's case should not be dismissed for his refusal to file schedules or a statement of affairs. The trustee requested that Connelly be ordered to supply any and all information requested or face dismissal of his case for failure to do so. The office of the United States Trustee supported the trustee's motion to dismiss. The trustee's motion was fully briefed and taken under advisement after oral argument thereon. That motion had not been passed on at the time this case was reassigned to the undersigned in mid-1985.

On June 21, 1985, Connelly finally filed a Statement of Financial Affairs for Debtor Not Engaged in Business. However, he answered only one question therein: "What is your full name?" Connelly answered every other question on the state-ment of affairs, and every item on the attached schedules, by invoking *inter alia* the Fifth Amendment privilege against self-incrimination.[1] On September 26, 1985, Connelly filed his schedules of liabilities and personal property, answering every item with the same invocation of the Fifth Amendment.[2]

On July 1, 1985, the trustee noticed all parties on the matrix list of a Bankruptcy Code § 341 meeting of creditors[3] to be held on July 19, 1985, and invited any creditor to attend and examine Connelly, the debtor. The meeting was continued to August 21, 1985, at which time Connelly did appear with counsel.[4] However, the trustee was only able to elicit two responses from Connelly; he stated his name, and affirmed that his signature did appear at the bottom of his bankruptcy petition. Connelly refused to answer every other question posed by the trustee, claiming that to answer would violate *inter alia* his Fifth Amendment rights.[5] Connelly even asserted that objection to such apparently innocuous questions as: "What is your correct home address, please?"[6] and "Are you married, Mr. Connelly."[7] He refused to

---

1. Connelly's verbatim response to the questions on the Statement of Affairs was:

 On August 15, 1985 the debtor, by his attorneys, requested, pursuant to 11 U.S.C. Section 344, that he be granted immunity to testify in these proceedings. (Copy of request attached as exhibit 1.) On October 17, 1985 the Department of Justice declined to seek an order providing immunity for the debtor. (Copy of letter from Department of Justice attached as Exhibit 2.) The debtor respectfully declines to answer this question on the ground that his answer may tend to incriminate him and on the further grounds that to answer would violate his rights under the First, Fourth, Fifth, Sixth and Ninth Amendments to the United States Constitution.

2. Connelly's response to every item on his schedules of liabilities and personal property is set forth in note 1 *supra*.

3. 11 U.S.C. § 341 provides:
 (a) Within reasonable time after the order for relief in a case under this title, there shall be a meeting of creditors.
 (c) The court may not preside at, and may not attend, any meeting under this section.

11 U.S.C. § 343 provides:
The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title. Creditors, any indenture trustee, or any trustee or examiner in the case may examine the debtor.

4. Report of Proceedings at the Offices of Cooper & Cooper, Ltd. at 1–4, *In Re Connelly*, No. 84 B 2020 (Bankr.N.D.Ill. filed September 24, 1985).

5. Connelly's exact response was:
 "I respectfully decline to answer on the grounds that my answer may tend to incriminate me and further, that to answer would be a violation of my First, Fourth, Fifth, Sixth and Ninth Amendments, my rights under those Amendments to the United States Constitution."
 By agreement thereafter Connelly responded to the trustee's questions in short form, first with "same answer" and then with "I assert my constitutional privilege." *Id.* at 4–5.

6. Report of Proceedings at the Offices of Cooper & Cooper, Ltd. at 4.

7. *Id.* at 15.

answer the trustee's question concerning documents he had voluntarily filed with the bankruptcy court, other than to acknowledge his signature on the Chapter 7 petition. He refused to answer questions concerning his employment, property, income, business and financial transactions and condition. Nor has Connelly ever turned over any property or documents to the Trustee. The trustee felt he had no alternative but to continue the § 341 meeting without specific date until an appropriate order was procured from this Court.

Presently only two matters are pending before the court directly pertaining to Connelly's assertion of the Fifth Amendment. The trustee, as noted, has moved to dismiss Connelly's Chapter 7 case. That motion was fully briefed, argued orally, and taken under advisement. Neither trustee nor any parties in interest have yet moved to compel specific responses, testimony, the production of documents or the turnover of property of the estate. On November 27, 1985, Connelly moved for declaration that any turnover of his property to the trustee would not be deemed a waiver of his Fifth Amendment privilege. That motion is now pending as "Debtor's Motion for Order Declaring Debtor's Rights under Section 521".

While debtor in his written responses to the bankruptcy schedules and statement questions asserted undefined rights under the First, Fourth, Sixth, and Ninth Amendments to the United States Constitution, as well as under the Fifth, he has limited his argument before this Court to Fifth Amendment assertions.

## II. STATUTORY PROVISIONS

A debtor's assertion of the Fifth Amendment in such a blanket fashion during the administration of a bankruptcy case clashes with many sections of the Bankruptcy Code.

Bankruptcy Code § 521 specifies debtor's duties in this case:

The debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs;

. . . . .

(3) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

(4) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title;[3] and

(5) appear at the hearing required under section 524(d) of this title.

Code § 343 also requires that:

The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title. Creditors, any indenture trustee, or any trustee or examiner in the case may examine the debtor.

Recognizing that complying with the above requirements may cause some debtors to apprehend or risk self-incrimination, Code § 344 provides:[9]

Immunity to persons required to submit to examination, to testify, or to provide information in a case under this title may be granted under part V of title 18.[10]

---

8. The language "whether or not immunity is granted under section 344 of this title," was added to § 521 as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 98 Stat. 333, 375 (1984). This amendment does not apply to Connelly's case as it was filed prior to the amendment's October 8, 1984, effective date. Bankruptcy Amendments and Federal Judgeship Act of 1984, 98 Stat. at 392 (1984).

9. The immunity option made available to debtors by 11 U.S.C. § 344 is not presently available to Connelly. The United States Attorney for the Northern District of Illinois denied Connelly's request for immunity by letter dated October 17, 1984.

10. Section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10) (repealed 1979), granted automatic use and derivative use immunity for testimony required of bankrupts, except that given

Code Section 727(a)(6) provides that a debtor who refuses to testify or respond to material questions approved by the court after a grant of immunity or after improperly invoking the Fifth Amendment may be denied a discharge:

§ 727 Discharge [11]

(a) the court shall grant the debtor a discharge unless—

. . . . .

(6) the debtor has refused, in the case—
(A) to obey any lawful order of the court, other than an order to respond to a material question or testify;
(B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or
(C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify[.]

The trustee or any parties in interest have not sought to deny Connelly his discharge, but rather moved to dismiss his case under Code § 707(a) which provides in pertinent part:

(a) The court may dismiss a case under ... chapter [7] only after notice and a hearing and only for cause, including—
(1) unreasonable delay by the debtor that is prejudicial to creditors[.]

## III. THE FIFTH AMENDMENT IN BANKRUPTCY

Under the Fifth Amendment to the United States Constitution, "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. It guarantees the individual's right "to remain silent unless he choses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for his silence." *Schmerber v. California*, 384

---

at hearings on objections to discharge. The immunity was limited to testimony and did not extend to books and records. *United States v. Seiffert*, 501 F.2d 974, 981–82 (5th Cir.1974). Section 344 is a departure from prior law. It carries the immunity provisions of 18 U.S.C. §§ 6001–6003, applicable to all proceedings before Federal courts, grand juries, administrative agencies and Congressional committees, over into bankruptcy cases. Section 344 applies to the debtor and any other witness in a bankruptcy case. A grant of immunity requires the witness to testify; without it he may claim the privilege against self-incrimination. H.R.Rep. No. 595, 95th Cong. 1st Sess. 332–33 (1977) *reprinted in*, 1978 U.S.Code Cong. & Ad.News 5963, 6288–89; S.Rep. No. 985, 95th Cong. 2d Sess. 43–44 (1978), *reprinted in*, 1978 U.S.Code Cong. & Ad.News 5787, 5829–30.

**11.** Under the Bankruptcy Act a debtor could be denied a discharge for legitimately exercising his Fifth Amendment rights. Section 14(c)(6) of the Act, 11 U.S.C. § 32(c)(6) (repealed 1979), denied the debtor a discharge for any refusal to answer a material question approved by the court, even if the refusal was based on the privilege against self-incrimination. H.R.Rep. No. 595, 95th Cong. 1st Sess. 332–33, 385 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6288–89, 6341; S.Rep. No. 985, 95th Cong. 2d. Sess. 43–44, 99 (1978) *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5829–30, 5885.

The debtor was automatically granted immunity for testimony under § 7(a)(10), 11 U.S.C. 25(a)(10) (repealed 1979), but this did not extend to hearings on objections to discharge. *See* note 10 *supra*. If a debtor invoked the privilege and refused to testify at a discharge hearing he could be denied a discharge for his silence on the grounds asserted. *Kaufman v. Hurwitz*, 176 F.2d 210, 210–11 (4th Cir.1949). Thus the debtor was confronted with a choice between his discharge in bankruptcy and his constitutional privilege against self-incrimination. *Id.* 176 F.2d at 211, *Id.* H.R.Rep. No. 595 at 333, *reprinted in Id.* at 6289; *Id.* S.Rep. No. 985 at 43–44 *reprinted in Id.* at 5829–30.

Section 727(a)(6) is a departure from prior law under which debtor would be denied a discharge because of a proper assertion of Fifth Amendment privilege. It is clear that the Congress intended a marked change to eliminate the Hobson's choice between the Fifth Amendment privilege against self-incrimination and obtaining a discharge in bankruptcy. Under § 727(a)(6) a debtor is only denied a discharge if he refuses to testify after a grant of immunity or after improperly invoking the privilege. If the debtor claims the privilege and the United States Attorney does not request immunity he may refuse to testify and retain his right to a discharge. *Id.* H.R.Rep. No. 595 at 332–33, 385, *reprinted in Id.* at 6288–89, 6341; *Id.* S.Rep. No. 985 at 43–44, 99 *reprinted in Id.* 5829–30, 5885.

U.S. 757, 760–61, 86 S.Ct. 1826, 1830–31, 16 L.Ed.2d 908 (1966).

The Fifth Amendment privilege against self-incrimination is the most important exception to the government's power to compel persons to testify in court or before grand juries and other governmental agencies. It is also an exception to the public's right to every person's evidence. *Kastigar v. United States*, 406 U.S. 441, 443–44, 92 S.Ct. 1653, 1655–56, 32 L.Ed.2d 212 (1972). That privilege can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory. It protects the witness against compulsion to make any disclosure which he "reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. at 444–45, 92 S.Ct. at 1656. *See also National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 926 (7th Cir.1983).

"[A] man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime." *Johnson v. United States*, 228 U.S. 457, 459, 33 S.Ct. 572, 572, 57 L.Ed. 919 (1913). Yet there is no doubt the privilege extends to protect debtors and witnesses in bankruptcy proceedings. *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); *Butcher v. Bailey*, 753 F.2d 465, 467 (6th Cir.), *cert. dismissed*, —— U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985); *In Re Martin-Trigona*, 732 F.2d 170, 175 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 191, 83 L.Ed.2d 124 (1984). Absent a grant of immunity, a debtor may properly assert his Fifth Amendment rights and retain his right to be discharged. *See* 11 U.S.C. §§ 344, 727(a)(6); *In Re Martin-Trigona*, 732 F.2d at 173 n. 6; *see also* note 11 *supra*.

On the other hand, "full disclosure of all relevant information has always been an important policy of the bankruptcy laws." A. Kurland, *Debtors' Prism: Immunity for Bankrupts under the Bankruptcy Reform Act of 1978*, 55 Am.Bankr.L.J. 177, 179 (Part I Spring 1981) (footnotes omit-

ted). Therefore, when a debtor does assert his constitutional right to "refuse to testify for fear of self-incrimination, the bankruptcy court's ability to effect a thorough and equitable adjudication is jeopardized." *Debtors Prism*, 55 Am.Bankr.L.J. at 178 (footnote omitted). A commentator has posed the theoretical problem that confronts this court now: "If carried to its ultimate extreme, would not the assertion of the privilege cause a lot of havoc with bankruptcy investigations?" King, *Constitutional Rights and the Bankruptcy Act*, 72 Com.L.J. 315, 317 (1967), *quoted in, In Re Butcher*, 38 B.R. 785, 795–96 (Bankr.E.D.Tenn.1984) *aff'd in part, rev'd in part*, 753 F.2d 465 (6th Cir.) *cert dismissed*, —— U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

This is not the ordinary case where the privilege is asserted in a discrete adversary proceeding or hearing and does not impede basic bankruptcy administration. Here the assertion of privilege has been made in blanket fashion and thus carried to its ultimate extreme. As things now stand, debtor has not scheduled his creditors, or his debts, or his assets and liabilities. Nor has he turned over any property or records to the trustee. Nor has he answered any questions about his affairs. His conduct has delayed administration of this estate and threatens entirely to prevent it. If that that can happen here, it can happen in other bankruptcy cases since there is a low threshold required for a proper showing of Fifth Amendment privilege. An active criminal investigation is not required. Thus, the issues presented by this case have bearing upon the fundamental system of bankruptcy relief. Debtors must readily comply with their statutory duties if smooth administration is to be possible without constant judicial intervention.

Accordingly, this court must decide whether in drafting § 727(a)(6) to require discharge despite proper assertion of the Fifth Amendment Congress permitted a debtor to avoid all his duties, retain all his property, and yet maintain his case and

obtain a discharge from his debts in Chapter 7.

## IV. SCOPE OF THE PRIVILEGE

▮▮▮ "The historic function of the privilege [against self-incrimination] has been to protect a 'natural individual' from compulsory incrimination through his own testimony or personal records." *Andresen v. Maryland,* 427 U.S. 463, 470–71, 96 S.Ct. 2737, 2743, 49 L.Ed.2d 627 (1976). A witness protected by the privilege may rightfully refuse to answer unless he is protected by immunity against use of his compelled answers and any derivative evidence in any subsequent criminal proceeding in which he is a defendant. *Garner v. United States,* 424 U.S. 648, 653, 96 S.Ct. 1178, 1181–82, 47 L.Ed.2d 370 (1976). If a witness is compelled to answer without such protection, his answers are not admissible against him in a subsequent criminal case. *Garner v. United States,* 424 U.S. at 653, 96 S.Ct. at 1181.

The privilege is "precious to free men as a shield against high-handed and arrogant inquistorial practices," *United States v. Washington,* 431 U.S. 181, 193, 97 S.Ct. 1814, 1821, 52 L.Ed.2d 238 (1977) (Brennan J. dissenting), and is "designed to prevent the use of legal process to force from the lips of the accused ... the evidence necessary to convict him or to force him to produce and authenticate any personal documents or effects that might incriminate him," *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974) *quoting United States v. White,* 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944).

▮▮▮ Of course, a witness must claim the privilege in a timely manner to shield his silence with the Fifth Amendment.[12] *See Garner v. United States,* 424 U.S. at 654–55, 96 S.Ct. at 1182–83. Once asserted, it only protects the witness against physical or moral compulsion exerted to compel testimonial or communicative self-incrimination. *Fisher v. United States,* 425 U.S. at 397–99, 96 S.Ct. at 1574–75; *Schmerber v. California,* 384 U.S. at 761, 86 S.Ct. at 1830–31. Moreover, oral, written or corporeal information can be obtained from an unwilling witness without offending the Fifth Amendment unless all three requisites for proper assertion of the privilege are present.[13] Those requisites are (i) a "compelled" disclosure, (ii) found to be "testimonial", and (iii) "incriminatory". See *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

### A. Compulsion

▮▮ The Bankruptcy Code requires that a debtor submit to examination at meetings of creditors, 11 U.S.C. § 343; file a list of creditors, schedules of assets and liabilities, and statement of financial affairs, 11 U.S.C. § 521(1); and, surrender to the trustee property of the estate, including

---

**12.** There is no question as to a timely assertion of the privilege by Connelly. The claim of privilege must ordinarily be presented to a tribunal for evaluation at the time disclosures are initially sought. *Garner v. United States,* 424 U.S. 648, 658 n. 11, 96 S.Ct. 1178, 1184 n. 11, 47 L.Ed.2d 370 (1976). Connelly has asserted his constitutional "right" to deprive the bankruptcy court and trustee of information since almost the outset of these proceedings.

**13.** The Supreme Court has often found the Fifth Amendment privilege was not violated for lack of compulsion; *See e.g., Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (introduction of business records seized during a search.) and *Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976) (introduction of returns against taxpayer who made disclosures instead of claiming the privilege.); or the absence of a *testimonial* communication that is incriminating. See *Fisher v. United States,* 425 U.S. 391, 408, 96 S.Ct. 1569, 1579–80, 48 L.Ed.2d 39 (1976), and cases cited therein: *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplars); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (voice exemplars); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood samples); and *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910) (donning of blouse worn by the perpetrator).

any recorded information relating to property of the estate, 11 U.S.C. § 521(4). Connelly has from the outset and throughout these proceedings asserted his Fifth Amendment privilege in lieu of making the foregoing disclosures and production required of him by the Bankruptcy Code. As the Sixth Circuit noted of the recalcitrant debtor in *Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir.) *cert. dismissed,* —— U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985), "compulsion is obviously present" from the Bankruptcy Code requirements. But a finding that compulsion is present is only the starting point. The Fifth Amendment is only violated when an individual, such as Connelly, is placed under "compulsion, to incriminate, not merely compulsion to make unprivileged disclosures." *United States v. Washington*, 431 U.S. 181, 190, 97 S.Ct. 1814, 1820, 52 L.Ed.2d 238 (1977), *quoting Garner v. United States*, 424 U.S. at 657, 96 S.Ct. at 1184.

### B. *"Testimonial" Incrimination*

Whether this debtor testifies at a meeting of creditors or other court proceeding or reveals information by filing the required petition, schedules and statement of financial affairs, he could perhaps be giving his "testimony" for Fifth Amendment purposes. *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); *cf. Garner v. United States*, 424 U.S. 648, 656, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976) (filing of income tax return). On the other hand, is the production of documents or other recorded information by this debtor both "testimonial" and "incriminating" under current Fifth Amendment standards? These questions will not "lend themselves to categorical answers [but] instead depend on the facts and circumstances...." *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976). Debtor's turnover of property of the estate to the trustee in bankruptcy, however, has recently been held *not* to be "testimonial". *See, e.g. In Re Crabtree*, 39 B.R. 726 (Bankr.E.D.Tenn.1984).

### C. *Possible "Incrimination"*

█ "Only the [debtor] knows whether the ... disclosure sought may incriminate him[.]" *Garner v. United States*, 424 U.S. 648, 655, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976). And he bears the burden of demonstrating he has "reasonable cause to apprehend a real danger of incrimination." *In Re Morganroth*, 718 F.2d 161, 167 (6th Cir.1983) *citing Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Generally, if an answer to a question, on its face, requires an admission of crime, that he supply evidence of a necessary element of a crime, or furnish a link in the chain of evidence needed to prosecute, the debtor faces a real danger of prosecution. *In Re Morganroth*, 718 F.2d at 167. A real danger of prosecution also exists where questions calling for innocuous answers are dangerous in light of other facts already developed or supplied by debtor. *In Re Morganroth*, 718 F.2d at 167 *citing Hoffman v. United States*, 341 U.S. at 486–87, 71 S.Ct. at 818–19. This court cannot determine from the present record whether or not the debtor's blanket assertion of privilege meets these standards. Before this Court can consider much less sustain Connelly's assertions, he must come forward with some minimal credible reasons why each of the many disclosures required of him to administer this case pose some real and not imaginary threat of incrimination. *See Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir.) *cert. denied*, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980).

### V. PROPER ASSERTION OF THE FIFTH AMENDMENT AS TO BANKRUPTCY SCHEDULES AND § 341 EXAMINATION

Before Connelly is entitled to remain silent there must be a valid assertion of the Fifth Amendment. *In Re Morganroth*, 718 F.2d 161, 167 (6th Cir.1983). The propriety of Connelly's assertion depends on two questions: First, is his fear of criminal prosecution sufficient to support an assertion of the privilege at all? Second, if so,

does responding to inquiries in this proceeding present some real danger of incrimination?

In their request for immunity, Connelly's attorneys stated debtor's belief that investigations by the S.E.C., F.B.I., F.D.I.C. and Justice Department were pending or had been completed within the past five years. Connelly's counsel also expressed apprehensions about a possible investigation by the United States Attorney. No basis for those assertions have been offered. If in fact Connelly is under or reasonably fears investigation, the additional fact that he has been denied a grant of immunity by the United States Attorney may well resolve the first question in his favor, but not the second.

 As long as a witness can demonstrate any possibility of prosecution which is more than fanciful, a claim of Fifth Amendment privilege is well taken. *In Re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir.1979). Moreover, it is the possibility of prosecution, not the judge's assessment of the likelihood of such prosecution, which establishes a valid claim. *In Re Corrugated Container Antitrust Litigation*, 661 F.2d 1145, 1150 (7th Cir.1981) *aff'd* 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). Thus, an assertion of the privilege is only rejected as a threshold matter when the danger of incrimination demonstrated is not real and appreciable, but only imaginary, remote and speculative. *See Ueckert v. C.I.R.*, 721 F.2d 248 (8th Cir.1983); *McCoy v. C.I.R.*, 696 F.2d 1234 (9th Cir.1983).

 Connelly has responded with a Fifth Amendment assertion to every point of inquiry except, his name, address, social security number and signature on the petition. This debtor "is not exonerated from answering merely because he declares in doing so he would incriminate himself ... It is for the court to say whether his silence is justified, * * * and to require him to answer 'if it clearly appears that he is mistaken' * * *." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (citations omitted). The law is quite clear. Debtor's "say-so does not of itself establish the hazard of incrimination[.]" *Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 818. It will not excuse him from performing his duties under the Bankruptcy Code. A total or blanket assertion of privilege simply will not suffice to establish the "reasonable cause to apprehend danger from a direct answer," required by *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). *In Re Morganroth*, 718 F.2d 161, 167 (6th Cir.1983).[14]

At this point, to sustain Connelly's blanket assertion as a proper one, the court must be satisfied he may legitimately avoid all his statutory duties of disclosure and production due to some demonstrated real and appreciable danger of incrimination. *See Marchetti v. United States*, 390 U.S. 39, 48–49, 88 S.Ct. 697, 702–03, 19 L.Ed.2d 889 (1968); *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir.1980). Thus far the danger of incrimination revealed is vague and apparently not as all-encompassing as Connelly's claim of privilege. His assertion of the Fifth Amendment to virtually every question and duty asked of him during the course of these proceedings has not yet been justified or supported.

 It is incumbent upon the court to conduct a proper inquiry into the legitimacy and scope of such a blanket assertion of privilege. *United States v. Goodwin*, 625 F.2d at 701. This requires the court to go beyond the threshold "possibility of prosecution," discussed above, *In Re Corrugated Container Antitrust Litigation*,

---

**14.** *See also, United States v. Moore*, 682 F.2d 853, 856 (9th Cir.1982); *Brunswick Corp. v. Doff*, 638 F.2d 108, 110 (9th Cir.1981), *cert. denied*, 454 U.S. 862, 102 S.Ct. 319, 70 L.Ed.2d 160 (1981); and *United States v. Goodwin*, 625 F.2d 693, 700–01 (5th Cir.1980), rejecting blanket assertions of the Fifth Amendment. Blanket assertions are equally improper when made on bankruptcy schedules, *In Re John Lakis, Incorporated*, 228 F.Supp. 918, 920 (S.D.N.Y.1964), or to refuse to testify at bankruptcy examination. *In Re Candor Diamond Corp.*, 21 B.R. 147, 152 (Bankr.S.D.N.Y.1982).

661 F.2d at 1150, and into the realm of "real danger of incrimination" if debtor were to respond to particular inquiries. *Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir.) *cert. denied*, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980). The court's inquiry into debtor's claim of privilege is guided by the standards of *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). See *United States v. Moore*, 682 F.2d 853, 856 (9th Cir.1982). Generally, he must have reasonable cause to apprehend danger of self-incrimination from direct answers to the specific questions posed. *Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 818; *Martin-Trigona v. Gouletas*, 634 F.2d at 360. Thus far, it is the lack of any specificity which renders debtor's blanket assertion deficient.

The Seventh Circuit has explained the precise burden Connelly bears: "[S]ome nexus between the risk of criminal conviction and the information requested must exist to excuse a witnesses' obligation to testify in a civil proceeding". *Martin-Trigona v. Gouletas*, 634 F.2d at 360.

"[A] witness need not establish that an answer to a question or an explanation why an answer cannot be given will in fact incriminate. He must, however, tender some credible reason why a response would pose a real danger of incrimination, not a remote and speculative possibility. The ultimate question of whether the privilege is properly invoked is one for the judge." *Martin-Trigona v. Gouletas*, 634 F.2d at 360, *citing, Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 1118 (1972).

The Second Circuit has stated, regarding apparently innocuous questions (such as: "Are you married, Mr. Connelly?") that the witness bears the burden of identifying the criminal charge or supplying sufficient facts so that a particular criminal charge can be reasonably identified by the court. *In Re Morganroth*, 718 F.2d 161, 167 (6th Cir.1983).

■ This debtor will risk real danger of incrimination and may refuse to answer when a question calls for the admission of a crime, that he supply evidence of a necessary element of a crime, or furnish a link in the chain of evidence needed to prosecute criminal conduct. *Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 818; *In Re Morganroth*, 718 F.2d at 167. He will also risk such real danger when questions which on their face call for only innocent answers are dangerous in light of other facts already developed. *In Re Morganroth*, 718 F.2d at 167. This court must be solicitous of debtor's claim; the benefit of the doubt goes to Connelly in his assertions of privilege. *In Re Corrugated Container Antitrust Litigation*, 661 F.2d at 1151.

■ Debtor is not required to prove the hazard of incrimination in detail; that would require him to surrender the very protection the privilege guarantees. *Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 818. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. at 486–87, 71 S.Ct. at 818–19; *Martin-Trigona v. Gouletas*, 634 F.2d at 360.

■ To deny debtor his privilege it must be "perfectly clear from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have [a] tendency to incriminate. * * *" *Hoffman v. United States*, 341 U.S. at 488, 71 S.Ct. at 819 (citations omitted). However, debtor's silence should only be sustained as to genuinely threatening questions. *United States v. Goodwin*, 625 F.2d at 701.

■ This court cannot, on the present state of the record, determine with the required particularity whether or not Connelly has properly asserted the Fifth Amendment on his bankruptcy schedules and at his § 341 meeting. He must come

forward with credible reasons why answering each question on the schedules and all those questions posed by the trustee would pose real danger of incrimination. For instance, seemingly innocuous questions about his residence, property having no relation to Churchfield, prior bankruptcy proceedings, and marital status have been requested of Connelly. He must come forward with a credible reasons why revealing such information presents more than a frivolous fear of incrimination.

■ Background information has also been requested of Connelly pertaining to his financial affairs which is necessary to administer every debtor's estate.[15] Particulars concerning such matters as his income, employment, creditors and property will not be privileged unless Connelly tenders to the court some credible reason why disclosing such matters exposes him to risk of criminal conviction.

For example, if Connelly fears investigation of his recent business practices while with Churchfield, how would disclosure of his nonbusiness property incriminate him? If he owns a personal residence and auto, or life savings and investments, or if a relative died leaving him property that he now holds personally, by what application of the Fifth Amendment can he now hide that, or information concerning it, from his creditors because of an unrelated business investigation? And if he apprehends a criminal investigation for certain business activities in a given time frame, why does he apprehend incrimination for answering questions about other unrelated business activities at other times.

Connelly must give at least some minimal explanation as to how his answers to those and other questions could potentially

furnish a link in the chain of evidence needed to prosecute him for conduct under investigation.

Here, moreover, Connelly appended to his schedules an unsworn and unsigned list of parties thereby filed with the Clerk of Court. He then refused to answer the trustee's questions concerning the list. "It is well established that 'disclosure of a fact waives the privilege as to details.'" *In Re Corrugated Container Antitrust Litigation,* 661 F.2d 1145 (7th Cir.1981) *aff'd* 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983) *quoting Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). He must explain, since the identity of such possible creditors was disclosed, why he now apprehends self-incrimination from giving details as to such creditors (e.g., amount claimed, whether secured or not, whether contested or not, circumstances, etc.). The issue as to whether he has waived privilege in that regard has not yet been briefed, argued, or decided by this court.

In the end, Connelly may well be found to have claimed the privilege properly with respect to some questions, but not all. *United States v. Goodwin,* 625 F.2d at 701. But this court, not Connelly, is the arbiter of his silence. *United States v. Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818. At present, his blanket assertion is insufficient.

## VI. COMPELLING PRODUCTION OF DOCUMENTS AND PROPERTY OF THE ESTATE

### A. *Introduction*

Bankruptcy Code § 521(4) commands a debtor to "surrender to the trustee all property of the estate and any recorded

---

**15.** The information requested by the Statement of Financial Affairs for Debtor Not Engaged in Business and accompanying schedules of liabilities and assets can be categorized as follows: The nature, amount and classification of creditors' claims, real and personal property, bank accounts and other monetary assets, safe deposit boxes, employment, income, involvement and positions in business enterprises, including partnerships, books of account and

records, tax returns and refunds, litigation, receiverships and the like, prior bankruptcies, prior names, payment of loans and other debts, property held by or for another, transfers of property, repossessions and returns, fire, theft or gambling losses, and payments or transfers to attorneys. The trustee's examination at the 341 meeting also concerned many of these matters.

information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344" of title 11. 11 U.S.C. § 521(4). If § 521(4) is construed literally a debtor has no Fifth Amendment right to withhold documents pertaining to property of the estate. Indeed, the 1984 amendment to § 521(4) requires surrender whether or not a debtor is granted immunity.[16]

Congress apparently took that step to negate a debtor's privilege as to recorded information. Section 521(4) follows a line of early Supreme Court cases that held a debtor had no Fifth Amendment protection against surrender and legitimate use of property that passed by operation of law into possession and control of the trustee.[17]

For that proposition the old cases remain viable. The Supreme Court has more recently held, as to a claimant not in possession of his documents, there is no compulsion from a summons directing a third party in possession to produce. *Compare*

*Fisher v. United States*, 425 U.S. 391, 397, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39 (1976) (documents in possession of attorney); *Couch v. United States*, 409 U.S. 322, 329, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973) (documents in possession of accountant) with *Johnson v. United States*, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913) (documents in possession of bankruptcy trustee).[18] That analysis, however, is not controlling when a debtor is in possession of recorded information pertaining to property of the estate. *Butcher v. Bailey*, 753 F.2d 465, 468 (6th Cir.) *cert. dismissed,* —— U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

*Matter of Harris*, 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 73 (1911), alone approved an order requiring a bankrupt to surrender books and records to the receiver. It has never been expressly overruled. Yet it was decided during the period when an individual's property rights supplied the underlying rationale for Fifth Amendment protection of documents.[19] As one com-

---

16. *See* note 8 *supra.*

17. The analysis is explained by the court in *Ex Parte Fuller,* 262 U.S. 91, 93, 94, 43 S.Ct. 496, 497, 497, 67 L.Ed. 881 (1923).

A man who becomes a bankrupt .. has no right to delay the legal transfer of the possession and title of any of his property to the officers appointed by law ... on the ground the transfer of such property will carry with it incriminating evidence against him ... [W]hen control and possession have passed from him, he has no constitutional right to prevent its use for any legitimate purpose. His privilege ... is that of refusing himself to produce, as incriminating evidence anything which he owns or has in his possession, but his privilege in respect to what was his and in his custody ceases on a transfer of control and possession ... by legal proceedings ... even ... into the ownership and control of one properly subject to subpoena *duces tecum. See also Dier v. Banton,* 262 U.S. 147, 43 S.Ct. 533, 67 L.Ed. 915 (1923) and *Johnson v. United States,* 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913).

18. Recently, in *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) the Supreme Court rejected the notion the Fifth Amendment should be tied to a concept of ownership, and discussed *Johnson v. United States,* 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913).

"[That] Court held that the books and records of a bankrupt transferred to a trustee in bankruptcy could be used as evidence against the bankrupt in a prosecution for concealing money from the trustee.... [B]oth title and possession passed in that transfer.... But the court, in denying the privilege, recognized that the transfer also succeeded in removing the important element of personal compulsion against the accused, *Id.* at 459, 33 S.Ct. at 572 just as, in this case, the nature of the divestment of possession did." *Couch v. United States,* 409 U.S. at 332 n. 14, 93 S.Ct. at 611 n. 14.

19. "During the nineteenth century, the reasons for protecting documents under the privilege sprang from notions that an owner's indefeasible natural law property rights put his property absolutely beyond the reach of the government. All property to which the government or other litigants could not claim paramount property rights remained beyond the reach of even the most carefully drawn subpoena." R. Heidt, *The Fifth Amendment Privilege and Documents— Cutting Fisher's Tangled Line,* 49 Mo.L.Rev. 439, 442 (Summer 1984) (footnote omitted). The transfer of a debtor's property by operation of law to the trustee did give the government a paramount property right. *Matter of Harris,* 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 73 (1911) is thus consistent with the property rights rationale prevalent at that time.

mentator notes, "[t]he property rights rationale for suppressing documents waned after 1945 and a somewhat related privacy rationale arose.[20] In 1976, the Supreme Court in *Fisher v. United States,* [425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)] rejected the privacy rationale[21] and adopted the implied admissions rationale[22] ..." R. Heidt, *The Fifth Amendment Privilege and Documents—Cutting Fisher's Tangled Line,* 49 Mo.L.Rev. 439, 442 (Summer 1984) (footnotes omitted).

Therefore, when debtor possesses his books and records, *Matter of Harris,* is no longer controlling. Its reasoning is inconsistent with later developments in Fifth Amendment jurisprudence. *Butcher v. Bailey,* 753 F.2d at 468. The Supreme Court's current view, that the act of production can itself be both testimonial and incriminating, must now guide bankruptcy proceedings. *Fisher v. United States,* 425 U.S. at 410, 96 S.Ct. at 1581; *Butcher v. Bailey,* 753 F.2d at 468.

### B. *Fisher v. United States: The Act of Production Doctrine*

The Supreme Court decided in *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), that taxpayer records turned over to her accountant could be subpoenaed from the accountant without violating her Fifth Amendment rights. *Couch v. United States,* 409 U.S. at 329, 93 S.Ct. at 616. The ingredient of personal compulsion against an accused was lacking. "[The accountant], not the taxpayer, [was] the only one compelled to do anything." *Couch v. United States,* 409 U.S. at 329, 93 S.Ct. at 616.

In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), taxpayers had transferred workpapers prepared by their accountants to attorneys they retained to assist them with I.R.S. investigations. The court affirmed the holding of *Couch,* and held that "compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself" *Fisher v. United States,* 425 U.S. at 402, 96 S.Ct. at 1576.

In *Fisher* the documents had been transferred to attorneys for the purpose of obtaining legal advice. If the documents were unobtainable from the taxpayer because they were privileged in his hands, after the transfer to an attorney they would remain unobtainable, due to the attorney-client privilege. *Fisher v. United States,* 425 U.S. at 402, 403–05, 96 S.Ct. at 1576, 1577–78. Therefore, the Court considered the additional question: "[W]hether the documents could have been obtained by summons addressed to the taxpayer while the documents were in his possession[.]" *Fisher v. United States,* 425 U.S. at 405, 96 S.Ct. at 1578. The Court held that enforcing taxpayer production of workpapers would involve no incriminating testimony within the protection of the Fifth Amendment. *Fisher v. United States,* 425 U.S. at 414, 96 S.Ct. at 1582.

The Court first found that "the documents sought were obtainable without personal compulsion on the accused."

---

**20.** Under the privacy rationale "the privilege must protect certain documents in order to safeguard a person's 'legitimate expectations of privacy' and his, 'private enclave where he may lead a private life.'" R. Heidt, *The Fifth Amendment,* 49 Mo.L.Rev. at 442.

**21.** *See Fisher v. United States,* 425 U.S. 391, 398–401, 405–09, 96 S.Ct. 1569, 1574–76, 1578–80, 48 L.Ed.2d 39 (1976), for a discussion of privacy as a rationale for Fifth Amendment protection and the Court's view that the Amendment protects against compelled self-incrimination, not the disclosure of private information.

**22.** Under the implied admissions rationale of *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), "the privilege does not protect any voluntarily prepared documents as such; it only prohibits compelling a person to utter self-incriminating testimony. The only reason a person may refuse to submit subpoenaed documents, therefore, is the act of submitting the documents carries with it implied, self-incriminating admissions." R. Heidt, *The Fifth Amendment,* 49 Mo.L.Rev. at 442. Specifically, implicitly admitting the existence, possession and authenticity of the documents requested. *Fisher v. United States,* 425 U.S. at 410–13, 96 S.Ct. at 1580–82.

*Fisher v. United States,* 425 U.S. at 398, 96 S.Ct. at 1574. Yet "[a] subpoena served on a taxpayer requiring him to produce an accountant's work papers *in his possession* without doubt involve[d] substantial compulsion." *Fisher v. United States,* 425 U.S. at 409, 96 S.Ct. at 1580 (emphasis added).

The Court concluded that an accountant's workpapers contain no testimonial declarations by the taxpayer. *Fisher v. United States,* 425 U.S. at 409, 96 S.Ct. at 1580. Therefore, a subpoena requiring their production does not compel oral testimony or that the taxpayer restate, repeat or affirm the truth of the documents contents. *Fisher v. United States,* 425 U.S. at 409, 96 S.Ct. at 1580. Furthermore, the documents sought were prepared voluntarily and did not contain compelled testimonial evidence, the taxpayers or anyone else's. *Fisher v. United States,* 425 U.S. at 409–10, 96 S.Ct. at 1580–81.

The Fifth Amendment would not be violated, nor could the taxpayer avoid compliance with a subpoena, solely because the evidence he is asked to produce contains incriminating writing his own or someone else's. *Fisher v. United States,* 425 U.S. at 409–10, 96 S.Ct. at 1580–81. "In the case of a documentary subpoena" the Court explained, "the only thing compelled is the act of producing the document...." *Fisher v. United States,* 425 U.S. at 410 n. 11, 96 S.Ct. at 1580 n. 11.

The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. * * * The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof.

*Fisher v. United States,* 425 U.S. at 410, 96 S.Ct. at 1581 (citations omitted). The Court then applied the foregoing "act of production" analysis and concluded that no matter how incriminating the contents of the accountant's workpapers, the mere act of production in that context was not itself testimonial self-incrimination. *Fisher v. United States,* 425 U.S. at 410–11, 96 S.Ct. at 1580–81. The existence and location of the documents were foregone conclusions. By conceding he has the papers, the taxpayer would add little or nothing to the government's information. Implicitly admitting the existence and possession of the papers did not, therefore, rise to the level of protected "testimony". *Fisher v. United States,* 425 U.S. at 411, 96 S.Ct. at 1581. Under these circumstances, "[t]he question is not of testimony but of surrender[,]" for "no constitutional rights are touched" by enforcement of the summons. *Fisher v. United States,* 425 U.S. at 411, 96 S.Ct. at 1581.

Finally, the taxpayer did not prepare the papers, could not vouch for their accuracy, and authenticating testimony would be required to admit them into evidence against him. *Fisher v. United States,* 425 U.S. at 413, 96 S.Ct. at 1582. The possibility that responding to the subpoena would authenticate the workpapers did not, therefore, appear to represent a substantial threat of self-incrimination. *Fisher v. United States,* 425 U.S. at 412, 413, 96 S.Ct. at 1581, 1582. The Court noted this "implicit authentication" element appears to be the prevailing justification for extending Fifth Amendment protection to documentary subpoenas. *Fisher v. United States,* 425 U.S. at 412 n. 12, 96 S.Ct. at 1582 n. 12.

In 1984 the Supreme Court followed *Fisher,* and applied the "act of production" analysis to business records in the possession of a sole proprietor, which were previously considered privileged. *See Bellis v.*

*United States,* 417 U.S. 85, 87–88, 94 S.Ct. 2179, 2182–83, 40 L.Ed.2d 678 (1974). In *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Court found that a sole proprietor's business records were voluntarily prepared. Therefore there was no compulsion in their preparation, so the contents were not privileged. However, as the lower courts had found, the Court held the act of producing his papers would involve testimonial self-incrimination and, absent a grant of immunity, was privileged. *United States v. Doe,* 465 U.S. at 610–12, 612–14, 617, 104 S.Ct. at 1241–42, 1242–43, 1245; *accord United States v. Porter,* 711 F.2d 1397 (7th Cir.1983).

*Fisher* has without question changed the nature of a courts' inquiry when Fifth Amendment claims are raised to resist the production of documents.

The Second Circuit allowed a former company president to assert the privilege as to corporate records in his possession, although such documents are not considered privileged. In *In Re Grand Jury Subpoenas Duces Tecum,* 722 F.2d 981 (2d Cir.1983), the Court of Appeals recognized that the contents of such documents are not privileged. But it held under *Fisher* that the circumstances of the former president's possession of the documents were significant, and thus the act of production might be protected against. *In Re Grand Jury Subpoenas Duces Tecum,* 722 F.2d at 986–87.

The Sixth Circuit, as noted above, also found *Fisher* controlling when a debtor possesses documents related to property of the estate that are demanded by the trustee. *Butcher v. Bailey,* 753 F.2d 465 (6th Cir.) *cert. dismissed,* —— U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

**C. Compelling Connelly to Produce Documents or Property: The Application of Fisher**

**(a) Documents**

Parties in interest have not moved in this case to compel Connelly to produce any specific documents. Indeed, at oral argument counsel for the trustee and United States Trustee disclaimed any obligation or need for them to do so. Section 521(4) of the Bankruptcy Code limits the scope of what can be compelled to recorded information relating to property of the estate. The form Statement of Financial Affairs for Debtors Not Engaged in Business requires debtor and all debtors to provide information concerning the filing of tax returns, and the existence and locations of bank accounts or records, within the prior two years.[23]

Whether the implied admissions a witness makes by producing documentary evidence will be both "testimonial" and "incriminating" does not lend itself to a categorical answer. That depends on the facts and circumstances of the particular case. *Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976). One commentator has in turn stated "the Supreme Court's standard for suppression is so dubious and difficult to apply that *Fisher* has produced utter confusion in the lower courts [and its] practical effect has largely been nullified". *R. Heidt, The Fifth Amendment Privilege and Documents—Cutting Fisher's Tangled Line,* 49 Mo.L.Rev. 439, 443, 443 n. 14 (Summer, 1984).

However difficult the Supreme Court's "act of production" analysis, it is the basic

---

**23.** Specifically,

3a) Where do you file your federal, state and municipal income tax returns for the two years immediately preceeding the filing of the original petition herein?

5a) Have you kept books of account of records relating to your affairs within the two years immediately preceeding the filing of the original petition herein?

b) In whose possession are these books or records? (Give names and addresses.)

c) If any of these books or records are not available, explain.

d) Have any books of accounts or records relating to your affairs been destroyed, lost or otherwise disposed of within the two years immediately preceeding the filing of the original petition herein? (If so, give particulars, including date of destruction, loss or disposition, and reason therefor.)

guide for compelling document production from Connelly. The standards of *Fisher* guide a court's determination of whether a tacit admission is sufficiently "testimonial", while the standards of *Hoffman v. United States*, (*supra* pp. 433–35) guide a court's determination of whether a given testimonial admission is "incriminating". It is against the foregoing standards that the validity of Connelly's broad assertion of Fifth Amendment privilege must be tested.

Although not yet expressly asserted by this debtor, there are at least three implied admissions Connelly might make by surrendering recorded information to the trustee, any of which could constitute "testimonial self incrimination": (i) that the papers demanded do exist; (ii) that they are in his possession and control; and, (iii) that he believes they are the papers demanded or otherwise would impliedly authenticate them through production. *See Fisher v. United States*, 425 U.S. at 410, 412–13, 96 S.Ct. at 1581, 1581–82.

■■■ Without information indicating the exact nature of documents possessed by Connelly or his attorneys that may relate to property of the estate, an analysis of what exactly he can be compelled to produce is impossible. However, two propositions will be applicable to any such recorded information. First, if Connelly has turned over documents to his attorneys, they are only privileged from surrender to the trustee if they would be privileged in Connelly's hands. *Fisher v. United States*, 425 U.S. at 396, 405, 96 S.Ct. at 1573, 1578. Second, Connelly cannot refuse to surrender documents to the trustee merely because a particular piece of recorded information contains incriminating writing, his own or someone else's. *Fisher v. United States*, 425 U.S. at 410, 410 n. 11, 96 S.Ct. at 1580, 1580 n. 11.

■■■ Moreover, the Sixth Circuit has specifically held that the contents of personal records relating to property of a debtor's estate are not privileged. Such information is not so "intimately personal as to evoke serious concern over privacy interests, particularly in bankruptcy where the trustee has a strong interest in knowing the nature and scope of the estate's holdings." *Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir.), *cert. dismissed,* —— U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985). Setting privacy interests aside, unless the government has compelled Connelly to write, the contents of pre-existing voluntarily prepared documents are just not privileged due to the absence of compulsion.[24] That the contents of documents are not privileged does not end the court's inquiry since the act of producing them may be. *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984).

■■■ Some categories of documents are not privileged and will be compelled notwithstanding the incriminatory effect of the act of production. Under *Fisher*, workpapers or other such documents prepared by Connelly's accountants or other third parties, may be compelled whether Connelly or the third party has possession. *Fisher v. United States*, 425 U.S. at 409–14, 96 S.Ct. at 1580–82. *See also, In Re Butcher*, 43 B.R. 60, 62 (Bankr.E.D.Tenn.1984) and *In Re Butcher*, 38 B.R. 785, 794 (Bankr.E.D.Tenn.1984), *aff'd in part, rev'd in part*, 753 F.2d 465 (6th Cir.1985) *cert. dismissed,* —— U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

■■■ "Required records" are not privileged and, if kept, must be surrendered. This exception is a narrow one limited to "records required by law to be kept", *Shapiro v. United States*, 335 U.S. 1, 33, 68 S.Ct. 1375, 1392, 92 L.Ed. 1787 (1948), and only compels turnover of documents the government requires to be preserved "pur-

---

**24.** *See United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1985) (where business records are voluntarily prepared, no compulsion is present) *and Fisher v. United States*, 425 U.S. 391, 410 n. 11, 96 S.Ct. 1569, 1580 n. 11, 48 L.Ed.2d 39 (1976) (unless the government has compelled the subpoenaed person to write the document ... the fact that it was written by him is not controlling with respect to the Fifth Amendment).

suant to an essentially regulatory scheme. [Such] records have assumed 'public aspects' which render them analogous to public documents." *United States v. Porter,* 711 F.2d 1397, 1404 (7th Cir.1983). *See also In Re Butcher,* 43 B.R. at 62; and *In Re Butcher,* 38 B.R. at 794.

 The records of any collective entity, corporations, partnerships and the like, which Connelly possesses in a representative capacity are not privileged and must be produced, even if they incriminate him personally. *Bellis v. United States,* 417 U.S. 85, 89–90, 94 S.Ct. 2179, 2183–84, 40 L.Ed.2d 678 (1974); *see also In Re Butcher,* 38 B.R. at 794–95. A few non-business notations or similar indicia of personal use will not be sufficient to extend Fifth Amendment protection to documents that are entity records. *United States v. MacKey,* 647 F.2d 898 (9th Cir.1981). In short, he would normally be obliged to produce copies of Churchfield documents or those of any other entity within the categories sought by the Trustee.

 As noted above, however, in *In Re Grand Jury Subpoenas Duces Tecum,* 722 F.2d 981 (2d Cir.1983), the Second Circuit did hold notwithstanding the absence of Fifth Amendment protection for *corporate* records, a former corporate president in possession of such records was entitled to Fifth Amendment protection, or immunity, if his act of production had an incriminatory effect. *In Re Grand Jury Subpoena Duces Tecum,* 722 F.2d at 986–88. However, the Seventh Circuit has not to date adopted that extension of *Fisher.* Other courts have declined to do so, and this court follows the guidance of those cases. *In Re Grand Jury Proceedings (Vargas),* 727 F.2d 941, 944–45 (10th Cir.) *cert. denied,* —— U.S. ——, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984); *In Re Grand Jury Empanelled (March 8, 1983),* 722 F.2d 294 (6th Cir., 1983) *cert. dismissed,* 465 U.S. 1085, 104 S.Ct. 1458, 79 L.Ed.2d 774 (1984); *In Re Grand Jury Subpoenas (S. February 27, 1984),* 599 F.Supp. 1006, 1013 (E.D. Wash., 1984). Connelly will be compelled

to produce any such records in his possession.

 Finally, Connelly must produce any other recorded information relating to property of the estate, whether or not incriminating, unless he can demonstrate that the act of producing such information is both testimonial and incriminating. *Fisher v. United States,* 425 U.S. at 410–11, 96 S.Ct. at 1580–81. *See also, United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984); *Butcher v. Bailey,* 753 F.2d 465, 469 (6th Cir.) *cert. dismissed,* —— U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

Turning specifically to Churchfield documents that this debtor may possess, the "testimonial" nature of the act of production must be considered. If the existence and location of specific documents are known or identifiable by the trustee, this would significantly minimize the testimonial aspects of producing those documents. Since the trustee is aware of the related business bankruptcy of *Churchfield Management & Investment Corporation,* also pending before this court, he may have access to necessary records therein. Connelly might add little or nothing to available information by conceding he does in fact, have copies of documents found in that related business entity to which he had a former relationship. *See Fisher v. United States,* 425 U.S. at 411, 96 S.Ct. at 1581. Since there is no need to rely on Connelly's "truthtelling" to prove the existence of or his access to documents and implicitly admitting their existence, his possession of such documents will not rise to the level of "testimony" for Fifth Amendment purposes. *See, Fisher v. United States,* 425 U.S. at 411, 96 S.Ct. at 1581. Under those circumstances a court usually need only determine whether any implicit "authentication" of the documents is both testimonial and incriminating.

In this case, however, it is unlikely the trustee and parties in interest will possess specific knowledge as to the existence and location of many specific documents. Indeed, one interested creditor in this and the

*Churchfield* case (Winston & Strawn) claim in *Churchfield* to have a statement from Connelly's former secretary that this debtor caused removal and destruction of many Churchfield documents before that company filed its petition in bankruptcy. So in this case the trustee will be forced to dig deeply for what Connelly refuses to disclose. The circumstances confronting this court may be similar to those noted in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 1243 n. 12, 79 L.Ed.2d 552 (1984), where the Court of Appeals had at 680 F.2d 335 stated:

> "[W]e find nothing in the record that would indicate that the United States knows, as a certainty, that each of the myriad documents demanded ... in fact is in the appellee's possession or subject to his control. The most plausible inference to be drawn from the broad sweeping subpoenas is that the Government unable to prove that the subpoenaed documents exist—or that appellee even is somehow connected to the business entities under investigation—is attempting to compensate for its lack of knowledge by requiring the appellee to become, in effect, the primary informant against himself."

Thus compelling Connelly to produce documents might trigger the hazard of incrimination should he be compelled to tacitly admit the existence, location and authenticity of the documents sought.

 When the existence and location of documents are at issue, their production will arguably be testimonial. *United States v. Porter*, 711 F.2d 1397, 1403 n. 5 (7th Cir.1983). In *United States v. Doe*, the witness did not concede that the subpoenaed documents existed or were in his possession. The Court found enforcement of the subpoenas would compel admissions which "if made under compulsion of a court decree, would violate [respondent's] Fifth Amendment rights." *United States v. Doe*, 465 U.S. at 613, 613 n. 11, 614 n. 13, 104 S.Ct. at 1243, 1243 n. 11, 1243 n. 13.

Authentication, the third element, can itself be testimonial. It was one factor supporting the finding of a valid Fifth Amendment claim in *United States v. Doe:* "if the government obtained the subpoenaed documents from another source, it would have to authenticate them before they would be admissible at trial. See Fed.R.Evid. 901." *United States v. Doe*, 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13.

In *United States v. Porter*, 711 F.2d 1397 (7th Cir.1983), the court found the implicit authentication ensuing from production would constitute undeniable compelled testimony: the taxpayer "both 'prepared' the checks and deposit slips and could vouch for their accuracy; indeed it is likely that his authentication would be most authoritative." *United States v. Porter*, 711 F.2d at 1401–02. Similarly, in *Butcher v. Bailey*, 753 F.2d 465 (6th Cir.) *cert. dismissed,* — U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985), the court held the debtor's production of records would be sufficient to authenticate them as his personal records and, therefore, would be testimonial. *Butcher v. Bailey*, 753 F.2d at 469.

In short, compelling certain documents from Connelly might have some potential for compelling testimonial admissions. But the final question in this area is whether testimonial admissions Connelly might impliedly make by the act of producing documents will be incriminating so as to excuse him from production. The contents of specified documents must be considered to evaluate the incriminating potential of authenticating them through production. "[A]uthentication cannot be incriminating unless the contents of the document tend to incriminate." *Butcher v. Bailey*, 753 F.2d at 470.

 The incriminating effect of a given admission ensuing from Connelly's production of documents can arguably be so far-fetched or trivial that the Fifth Amendment will not be implicated. *See United States v. Doe*, 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13; *See also Fisher v. United States*, 425 U.S. at 412, 96 S.Ct. at 1581. But, to deny his claim of privilege, it must be perfectly clear that compelling produc-

tion of a given document will not confront him with a "real and substantial" hazard of incrimination, but only a "trifling or imaginary" threat. *United States v. Doe*, 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13; *Hoffman v. United States*, 341 U.S. 479, 486–87, 489, 71 S.Ct. 814, 818–19, 819, 95 L.Ed. 1118 (1951).

For example in *In Re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981 (2d Cir.1983), the witness advanced a colorable "link in the chain" argument. His formal testimonial admission that he did possess Company documents would tend to corroborate evidence that he had misappropriated documentary evidence. That, in turn, would enable the government to argue in any criminal proceeding that his removal of documents from company files was a tacit admission he had knowledge of their incriminating contents, thus providing the "smoking gun" to prove his guilt. *In Re Grand Jury Subpoenas Duces Tecum*, 722 F.2d at 987. Similarly, if Connelly did remove or destroy documents from Churchfield records, as alleged in the related *Churchfield* case, his present possession of original documents which are not found at the Churchfield premises might have an incriminating effect, while mere copies of documents still at Churchfield will not.

Determining incriminating potential requires a factual inquiry. *Butcher v. Bailey*, 753 F.2d at 470. Therefore, Connelly must come forward with some credible reason why producing specific documents, aside from their contents, poses a real danger of incrimination. *Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir.) *cert. denied*, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980). "There is nothing incriminating about authenticating an innocuous document." *Butcher v. Bailey*, 753 F.2d at 470.

█ Of course, it is also appropriate to observe that nothing prevents the trustee from seeking documents relating to Connelly that may be in the hands of third parties. While trustee has that right, it is likewise appropriate to observe that the Bankruptcy Code does not contemplate that trustee would normally have the heavy burden of investigating and struggling to obtain documents and information that the debtor has a duty to produce.

### (b) *Producing Property of the Estate*

Three bankruptcy courts have addressed the question of whether the debtor may be privileged under the Fifth Amendment from turning over tangible property of the estate. All held that he is not. *In Re Crabtree*, 39 B.R. 726, 731 (Bankr.E.D. Tenn.1984), analyzed the early bankruptcy cases such as *Matter of Harris*, (discussed *supra* at page 437–38), and concluded that debtor's obligation to surrender his assets compels no testimony within the protective scope of the Fifth Amendment. The Court in *In Re Devereaux*, 48 B.R. 644 (Bankr.S.D.Cal.1985) followed the analysis and result of *In Re Crabtree*.

In *In Re Krisle*, 54 B.R. 330 (Bankr.D.S. D.1985), the debtor had without authorization withdrawn a substantial sum from the debtor-in-possession account and was held in civil contempt for disregarding the court's order to turnover the cash collateral. *In Re Krisle*, 54 B.R. at 332–38. The debtor asserted *inter alia* that to turnover this property of the estate would absent immunity violate his Fifth Amendment rights. *In Re Krisle*, 54 B.R. at 339. The court followed *Matter of Harris* and *In Re Crabtree*, and simply held "an order to turnover property of the estate does not violate a debtor's Fifth Amendment rights and, therefore, immunity is not an issue." *In Re Krisle*, 54 B.R. at 338, 340.

Debtor's attorneys have in memoranda recognized that turnover of property of the estate is not considered testimonial. Without question, extending a debtor's Fifth Amendment privilege to block turnovers of estate property could severely, if not completely, obstruct the administration of bankruptcy estates. However, this question must be posed: If the existence and the debtor's possession and control of property of the estate is unknown or disputed, could the debtor make a colorable claim

that the act of producing such property is privileged?

Two footnotes in *Fisher v. United States* lend some support to such an argument. That decision did suggest there is no distinction for Fifth Amendment purposes between producing a document or a chattel, and in either case the act of production may be compelled and testimonial.[25] *Fisher v. United States*, 425 U.S. at 410 n. 11, 412 n. 12, 96 S.Ct. at 1580 n. 11, 1582 n. 12.

It is unlikely that potential tacit admissions Connelly might make by surrendering physical assets to the trustee will rise to the level of testimony for Fifth Amendment purposes. The analysis of *In Re Crabtree* and similar cases, should be sufficient to reject any of his claims of privilege from turning over property of the estate. Should Connelly confront the court with viable claims of "smoking gun" assets unknown to the trustee or prosecutor, however, this court will then be constrained to consider whether testimonial and incriminating admissions will ensue from production thereof.

#### D. *Summary*

This court cannot determine the validity of Connelly's claim of privilege from producing documents and property of or relating to this estate, until he discloses the existence and nature of the documents and property possessed or controlled by debtor or his agent or counsel that are sought by the trustee. Nor can this court, without some details as to specific documents or property that debtor should surrender to the trustee, determine what admissions will

or might ensue from surrender thereof to the trustee, or whether such papers and property will be both testimonial and self-incriminating.

Should the court find that the act of producing any document or tangible item prompts a valid claim of privilege, the trustee will be denied those matters.

### VII. PROCEDURE: RULING ON CONNELLY'S FIFTH AMENDMENT CLAIMS

 The trustee's motion to dismiss is the primary matter that is before the court concerning Connelly's Fifth Amendment claim. Disposition of that motion is dependent upon the validity of Connelly's assertions. It is apparent that his present shotgun assertion as to all information, documents and property sought is insufficient and cannot by itself be sustained. But this case is not ripe for decision on the trustee's motion. Connelly must first be ordered to meet his burden which is to comply with his statutory duties or explain why he faces a real danger of incrimination from any particular inquiry and cannot do so. Of course this cumbersome process will conflict with Congress' intent that estate administration be smooth and aided by the debtor's cooperation. But debtor's Fifth Amendment rights must supersede the statutory plan for an efficient bankruptcy process.

 A court's inquiry into the validity of Fifth Amendment claims can be conducted in open court or *in camera*. *See Martin-Trigona v. Gouletas*, 634 F.2d 354

---

**25.** First, in discussing "compelled testimonial" communications the Court notes: "In the case of a documentary subpoena the only thing compelled is the act of producing the document *and the compelled act is the same as the one performed when a chattel or document not authored by the producer is demanded." Fisher v. United States*, 425 U.S. at 410 n. 11, 96 S.Ct. at 1580 n. 11 (emphasis supplied). Second, in discussing implicit authentication, the prevailing justification for extending Fifth Amendment protection to documentary subpoenas, the Court notes: "[T]he testimonial components involved in compliance with an order for production of documents *or chattels* 'is the witness' assurance, compelled as an incident of the process, that the

articles produced are the ones demanded; McCormick § 126 p. 268 ... [A]pplying the Fifth Amendment privilege to documentary subpoenas is defended on the theory that one who produces documents (*or other matter*) described in the subpoena *duces tecum* represents, by his production, that the documents produced are in fact the documents described in the subpoena.'" *Fisher v. United States*, 425 U.S. at 412 n. 12, 96 S.Ct. at 1582 n. 12. (Emphasis supplied.) Thus, the Court's "act of production" analysis would be equally applicable to a subpoena compelling production of a chattel and arguably, therefore, to an order compelling turnover of property of the estate.

(7th Cir.) *cert. denied,* 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980); *United States v. Goodwin,* 625 F.2d 693 (5th Cir. 1980). Whether Connelly supports his claims in open court or by submissions into chambers, this court has the obligation to assess the underlying factual basis for his Fifth Amendment claim. *Martin-Trigona v. Gouletas,* 634 F.2d at 361. Connelly must tender to the court some credible reason why fulfilling his statutory duties and disclosing specific information or surrendering certain property to the trustee poses a real danger of incrimination, not a remote and speculative possibility. *See Martin-Trigona v. Gouletas,* 634 F.2d at 360. To meet this standard of establishing reasonable cause to fear prosecution:

> "[A] witness must supply personal statements under oath or provide evidence with respect to each question propounded to him to indicate the nature of the criminal charge which provides the basis for his fear of prosecution and, if necessary to complement nontestimonial evidence, personal statements under oath, to meet the standard for establishing reasonable cause to fear prosecution....."

*In Re Morganroth,* 718 F.2d 161, 169–70 (6th Cir.1983). Connelly's sworn statements by personal affidavit will be required because the possible penalty of perjury may be the sole assurance against debtor's spurious assertion of the Fifth Amendment. *In Re Morganroth,* 718 F.2d at 170. Connelly's counsel may supply argument therefrom but not the facts necessary for the court's determination. *In Re Morganroth,* 718 F.2d at 170.

Connelly must therefore present sufficient evidence, by his own affidavit and otherwise, before this court can by reasonable inference from the facts before it conceive a sound basis for a reasonable fear of prosecution. *In Re Morganroth,* 718 F.2d at 169. His claims of privilege will, however, be sustained unless it is perfectly clear from a careful consideration of all the circumstances that he is mistaken and his answers cannot possibly have a tendency to incriminate. *Hoffman v. Unit-*

*ed States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951).

As required, Connelly has claimed the privilege in response to each specific question posed on the schedules or by the trustee. *See United States v. Moore,* 682 F.2d 853 (9th Cir.1983). This court must similarly rule on his obligation to answer each question as asked, although it is permissible to categorize. *See United States v. Goodwin,* 625 F.2d 693, 702 (5th Cir.1980). The court may either conduct hearings or review *in camera* submissions and decide in connection with each specific area sought to be explored by parties in interest whether or not Connelly's claims of privilege are well founded. *United States v. Goodwin,* 625 F.2d at 701. Similarly, with respect to documents, Connelly must be required to classify those produced and those withheld, and indicate why the act of producing each class of documents withheld might be incriminating. *Butcher v. Bailey,* 753 F.2d 465, 470 (6th Cir.) *cert. dismissed,* — U.S. —, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

The court takes note of the similar circumstances in *In Re Mutual Security Savings & Loan Assn., Inc.,* 214 F.Supp. 877 (D.Md.1963). The bankrupt's president asserted total Fifth Amendment privilege and refused to file schedules or a list of creditors. *In Re Mutual Security Savings,* 214 F.Supp. at 879. The court was not prepared, on the state of the record, to rule on which questions the president must answer or impose sanctions. *In Re Mutual Security Savings,* 214 F.Supp. at 882. That court ordered debtor to file the schedules and list of creditors, without prejudice to his right to claim that any potentially incriminating disclosure was privileged. He was ordered, to the extent he made such claims, to submit the basis for his invocation in a sealed envelope, for the court's use only. After consideration of his claims and any further proceedings, that envelope would be resealed subject only to examination by reviewing courts. *In Re Mutual Security Savings,* 214 F.Supp. at 882. That procedure was criticized in *In Re U.S. Hoffman Can Corp.,* 373 F.2d 622 (5th

**446**

Cir.1967). The Court of Appeals acknowledged, however, that circumstances might arise where "the judge must permit some further showing of incrimination before he can dispose of the claim." *In Re U.S. Hoffman Can Corp.*, 373 F.2d at 628. But it admonished that "even then a claimant can only be required to move forward to the limited extent requir[ed] to make it known he has reached a risk of disclosure which should be avoided, lest in establishing his right to the constitutional safeguard he says enough to destroy it." *In Re U.S. Hoffman Can Corp.*, 373 F.2d at 628.

This court is presently confronted with a debtor who has made a blanket assertion of Fifth Amendment privilege and now bears the burden of substantiating his claim with sworn statements and other evidence explaining his fear of criminal prosecution and the nature of the criminal charges he faces. Whether made in open court or otherwise, some submission from the debtor is required to posture this matter so the court can rule on the validity of his claims.

■ This court cannot attend the § 341 meeting of creditors and rule on Connelly's claims of privilege as questions are posed by the trustee. *See* 11 U.S.C. § 341(c). Nor can this court oversee the debtor's preparation of schedules and production of documents to determine points at which the hazard of incrimination arises and disclosure may stop. For these reasons, in bankruptcy the appropriate procedure by which a debtor can meet his burden and minimize the hazard of establishing the requisite danger of incrimination is one conducted *in camera* through written submission received by the court under seal. Should Connelly meet his burden and supply the court with some particularized basis for each assertion of the Fifth Amendment, the court can then rule with particularity as to the validity of his assertions, and issue any appropriate orders. The sealed record will then remain available for review by a higher court.

■ There are no motions presently pending before the court to compel Connelly to testify or surrender property of the estate to the trustee. Appropriate motions and responsive pleadings should normally be filed by the trustee because such motions would serve to prompt claims of privilege and focus the court's inquiry into its scope. Since such motions have not been filed and the parties in interest feel they have no obligation to do so, this court must *sua sponte* order Connelly to file completed bankruptcy schedules, submit to full examination, and surrender all property or records of the estate to the trustee. He must submit justification for every Fifth Amendment claim that he cannot fulfill those statutory duties. The trustee's motion to dismiss will be held in abeyance until Connelly has an opportunity to amplify and support his blanket assertion, after which the court will rule on the validity of his Fifth Amendment claims.

The Bankruptcy Code and Rules do not specifically address whether the court may *sua sponte* order a debtor to fulfill his statutory duties under the Code. Each relevant section simply commands that the debtor shall fulfill specified obligations ... 11 U.S.C. §§ 341, 343, 521(1), (4); Bankr.R. 4002. The only restriction in this regard is found in § 542(e) which provides the court may order a person to turnover recorded information relating to the debtor's property or financial affairs only "after notice and a hearing". 11 U.S.C. § 542(e). In the context of facts presented here and oral argument held *inter alia* on this point, debtor has had ample notice and hearing.

## VIII. THE REMEDIES AVAILABLE

As discussed earlier, Connelly's blanket assertion of privilege is an improper one. Section 727(a)(6)(B) and (C) allow the court to deny the debtor a discharge if he refuses to respond to a material question approved by the court or to testify after a grant of immunity or improperly asserting the Fifth Amendment. 11 U.S.C. § 727(a)(6)(B), (C). Should Connelly refuse to obey this court's order that he come forward with *in camera* justification for his privilege claims, that may be one possible sanction. The

Second Circuit dispelled the notion that denial of discharge is the exclusive remedy when a debtor refuses to testify. In *In Re Martin-Trigona*, 732 F.2d 170, 173–74 (2nd Cir.) *cert. denied,* ⸺ U.S. ⸺, 105 S.Ct. 191, 83 L.Ed.2d 124 (1984). A civil contempt order entered against a debtor who refused to testify about his assets despite a grant of immunity was proper, and incarceration of the debtor an appropriate remedy. *In Re Martin-Trigona*, 732 F.2d at 171, 174. In this case the remedy sought by trustee is not denial of discharge or contempt, but case dismissal.

If Connelly were denied a discharge under § 727(a)(6), he would thereafter be unable to discharge any debt that was or could have been listed in this case. 11 U.S.C. § 523(a)(9).[26] If his case is dismissed, however, unless this court orders otherwise, that order would not bar the discharge in a later case of debts that were dischargeable in this case. 11 U.S.C. § 349(a). Therefore, it should be permissable for this court to exercise its discretion and impose the lesser sanction of dismissal under circumstances permitting a denial of discharge.

Furthermore, the court may deny debtor a discharge for refusing "to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A). Consequently, in *In the Matter of Krattiger*, 52 B.R. 383, 383–85 (W.D.Wis.1985) the district judge affirmed the bankruptcy court's *dismissal* of a chapter 11 case after the debtor failed to timely file financial statements as ordered by the court. And in *In Re Martin-Trigona*, 35 B.R. 596 (Bankr.S.D.N.Y.1984), the debtor *inter alia* filed a Chapter 13 petition in violation of a permanent injunction issued by a district judge. The court found the violation of the injunction was cause to dismiss the case with prejudice under 11 U.S.C. § 1306. *In Re Martin-Trigona*, 35 B.R. at 602. Those courts found violation of a court order to be "cause" to *dismiss* the debtor's case [*See* 11 U.S.C. § 707(a), 1112(b), 1307(c) ] rather

than to deny the debtor a *discharge* as provided by § 727(a)(6)(A). Any improper refusal by Connelly to answer questions approved by the court, or to comply with the court order herein could similarly constitute "cause" to dismiss his case under § 707(a), rather than to deny him a discharge under § 727(a)(6)(C).

■ But it may well come to pass that Connelly meets his burden, that he answers questions and supplies property and documents as ultimately ordered by this court or is excused from doing so. These proceedings may thereby unfold in such a manner that leaves trustee with insufficient unprivileged information and less than all of debtor's property. Trustee may not be able to administer this case satisfactorily or at all. Congress certainly did not intend assertion of the Fifth Amendment to paralyze the bankruptcy court. When a court cannot grant relief on a bankruptcy petition, it should be able to dispose of the case. *See In Re Moog*, 46 B.R. 466, 468 (N.D.Ga.) *rev'd on other grounds,* 774 F.2d 1073 (11th Cir.1985). Although it is no longer an abuse of the bankruptcy laws or bad faith for a debtor properly to assert his constitutional right to remain silent, there are other conceptual bases for dismissing such cases.

■ First, the court has power *sua sponte* to dismiss a petition for judicial reasons, such as bad faith, frivolity or lack of jurisdiction. *See In Re Moog*, 46 B.R. at 468. Bankruptcy judges have dismissed cases which could not be administered. *In Re 30 Hill Top Street Corp.*, 42 B.R. 517 (Bankr.D.Mass.1984) (Insufficient funds for trustee to operate nursing home); *In Re Import Toy Sales*, 41 B.R. 784 (Bankr.S.D. Fla.1984) (Hospitalization of debtor's principal officer); *In Re Charles George Land Reclamation Trust*, 30 B.R. 918 (Bankr.D. Mass.1983) (Hazardous waste facility a threat to public safety). Further, under 11 U.S.C. § 105 without sufficient information and documents necessary to administer the estate and without surrender of property

26. Misnumbered; now actually subparagraph (10).

for benefit of creditors a case must be dismissed "to carry out the provisions" of the Bankruptcy Code.

▮ Indeed it would work a fraud on this court, on the entire bankruptcy system, and on Connelly's creditors to permit him to withhold information and documents, obtain his discharge,[27] and walk off with most or all of his unsurrendered property. A debtor may not turn the shield of the Fifth Amendment into a sword to cut his way to a discharge while carrying his property with him. His case will be dismissed, rather than permit that. He may file and seek discharge at a later date after his apprehensions of prosecution have ended.

▮ Of course a threat of adverse economic consequences may not be used to compel waiver of the Fifth Amendment privilege. *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *National Acceptance Co. of America v. Bathlater*, 705 F.2d 924, 928–32 (7th Cir., 1983). However, dismissing a bankruptcy case as a result of a proper assertion of privilege which results in impossibility of administration should pass constitutional muster. Section 349(a) preserves the debtor's right to discharge his debts in a later case, unless the court orders otherwise. Therefore, dismissal would impose no economic "cost" on him that he has a right to complain of. Indeed, a debtor can hardly complain when he is denied access to a process of liquidation from which he has withheld his assets and information.

▮ While a plaintiff has "a due process right to a judicial determination of his civil action," *Wheling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087–88 (5th Cir.1979), "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy." *United States v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973). Therefore, requiring Connelly to forfeit the right to remain silent or face dismissal is not requiring him to "forfeit one constitutionally protected right as the

price of exercising another." *Lefkowitz v. Cunningham*, 431 U.S. 801, 807–08, 97 S.Ct. 2132, 2137, 53 L.Ed.2d 1 (1977).

▮ Furthermore, dismissal, as opposed to denial of discharge, is not a "substantial penalty" imposed for the debtor's properly asserting Fifth Amendment rights. *See Lefkowitz v. Cunningham*, 431 U.S. at 805, 97 S.Ct. at 2135. Congress intended debtors in Connelly's position to retain the right to discharge his prepetition debts. 11 U.S.C. §§ 349(a), 727(a)(6)(A) and (B); H.R. Rep. No. 595, 95th Cong. 1st Sess. 332–33 (1977) *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6288–89; S.Rep. No. 985, 95th Cong. 2d Sess. 43–44 (1978) *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5829–30. But dismissal would require that Connelly merely delay and not sacrifice his bankruptcy discharge, until he can meet his statutory disclosure obligations. This is comparable to staying discovery until the plaintiff asserting the Fifth will no longer be threatened with criminal prosecution. *Wheling v. Columbia Broadcasting System*, 608 F.2d at 1084, 1088–89 (5th Cir., 1979).

Finally, in *Butcher v. Bailey*, 753 F.2d 465 (6th Cir.) *cert. dismissed*, — U.S. —, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985) in *dicta* the court stated with respect to documents that a

> "[v]oluntary bankruptcy proceeding could simply be dismissed if debtor refused to surrender such records. This would not violate any asserted privilege. *Cf. United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) (party cannot substitute claim of privilege for burden of production but, rather, must choose between them)." *Butcher v. Bailey*, 753 F.2d at 467 n. 3.

## IX. CONNELLY'S MOTION FOR ORDER DECLARING DEBTOR'S RIGHTS UNDER SECTION 521 OF THE BANKRUPTCY CODE

Debtor says he wishes to produce property of the estate for the trustee but is

---

**27.** See footnote 28 *infra* at p. 451.

concerned that a turnover of assets or recorded information might constitute a waiver of his Fifth Amendment privilege. Debtor says he will comply with his duty in bankruptcy to surrender property of the estate only if his rights are delineated by this Court.

A waiver requires an intentional relinquishment of a known right by debtor. *See, United States v. Moss,* 562 F.2d 155, 164 (2d Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978). Should debtor reveal incriminating information instead of timely asserting his privilege against self-incrimination, his disclosures would not be compelled and the privilege could not be invoked to prevent their use against him. *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 1149, 79 L.Ed.2d 409 (1984).

Debtor's concern is well illustrated by the case he cites, *In Re Candor Diamond Corp.,* 21 B.R. 147 (Bankr.S.D.N.Y.1982). In that case, the witness submitted her sworn affidavit denying business involvement with the debtor and other allegations; she also testified along similar lines at a preliminary injunction hearing. *In Re Candor Diamond Corp.,* 21 B.R. at 148–50. Thereafter, she was subpoenaed to testify at a Bankruptcy Rule 205(a) examination, and refused to do so on Fifth Amendment grounds. *In Re Candor Diamond Corp.,* 21 B.R. at 150. The Court held the witness, having freely testified to incriminating facts, had waived the right to invoke the privilege as to matters raised by her testimony. *In Re Candor Diamond Corp.,* 21 B.R. at 150–53.

Of similar vein is *In Re Oxford Royal Mushroom Products,* 46 B.R. 77 (Bankr.E.D.Pa.1985). The debtor's president testified at the Rule 2004 examination regarding transactions with an individual that the trustee believed to be fictitious. The president then invoked the privilege at a continued § 341 meeting of creditors. *In Re Oxford Royal Mushroom Products,* 46 B.R. at 78. The court held that he could not assert the privilege and refuse to provide details after voluntarily admitting his involvement at his § 341 testimony. *In Re Oxford Royal Mushroom Products,* 46 B.R. at 79–80.

Such cases rest on *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951). That decision held that a witness who freely described her membership, office and activities with the Communist Party of Denver had no privilege to refuse to disclose who she had turned party records over to. *Rogers v. United States,* 340 U.S. at 368–70, 372–75, 71 S.Ct. at 439–40, 441–43. The Supreme Court established a rule which is now well accepted: "Where incriminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of details." *Rogers v. United States,* 340 U.S. at 373, 71 S.Ct. at 442.

This Court need not yet delve into the intricacies of waiver and the multilevel test that has evolved from *Rogers v. United States.* See *Klein v. Harris,* 667 F.2d 274 (2d Cir.1981). The threshold requirement of voluntary relinquishment of the right to assert the privilege through disclosure of incriminating facts is totally absent here except possibly as to the identity of creditors disclosed by the unsworn matrix filed with the Clerk. This debtor has consistently and steadfastly asserted the privilege and volunteered nothing of substance except that matrix list. See *Matter of Bon Voyage Travel,* 449 F.Supp. 250, 252–53 (N.D.Ill.1978).

The debtor will hereinbelow be ordered to surrender all nonprivileged property or recorded information of this estate to the trustee, and to disclose privileged materials *in camera.* Complying with the *in camera* portion of this order will not be debtor's voluntary act and will not therefore constitute a waiver.

Due to the absence of immunity, debtor will not be compelled to answer those questions or to surrender those items of recorded information or property that are found to be privileged due to demonstrated testimonial and incriminating nature thereof or of the act of producing them.

The debtor did file a list of creditors which included Churchfield Management & Investment Company. This might under some circumstances well be construed as a voluntary disclosure of an incriminating fact and a waiver as to details thereof. *Klein v. Harris*, 667 F.2d at 287–89. But that issue has not been briefed or argued and will not yet be passed on here.

Given the procedure that will now be ordered, debtor's motion is found to be an improper way of seeking advance declaration of rights as to matters, facts and documents not yet even described to the Court. As such it will be denied. There is simply no need or occasion to issue an order delineating the prospective effect of debtor's compliance with some potential future orders of this court. And it would be improper for this court to enter an order having arguable effect on any Government investigation—if there really is one—when the U.S. Attorney has had no notice of this issue or any chance to comment thereon.

## X. CONCLUSION

The debtor Connelly has improperly asserted the Fifth Amendment privilege against self-incrimination in a blanket fashion throughout these proceedings. He has thereby deprived the trustee of information needed to administer this case, and hindered other parties in interest in the prosecution of any claims they might have against this debtor. Such conduct, if tolerated by the courts, has onerous and ominous implications for trustees, creditors and other parties with an interest in a bankruptcy case. The system of bankruptcy cannot function in the face of such a total blanket assertion as to information, documents, and property. Connelly will be ordered to correct his broad and deficient assertion of privilege or face dismissal should he adhere to his present unsupported assertion of privilege. Should he obey this court's orders, and later be found to have properly asserted his privilege, this court will then evaluate the total picture presented to see whether reasonable ad-ministration is possible or has been blocked by proper assertion of privilege. If the latter situation is found, this court will then consider dismissal.

By order hereinbelow, this Court will therefore require Connelly comply with his obligation as a debtor before this Court to file the required bankruptcy schedules, to submit to examination by the trustee at the § 341 meeting of creditors, and to surrender to the trustee all property of the estate including recorded information. Upon renewed assertions of privilege, he must submit to this Court *in camera* his personal sworn justification for each and every claim of Fifth Amendment privilege.

The Court will thereafter rule on the validity of Connelly's asserted claims of Fifth Amendment privilege and issue appropriate orders compelling further acts and conduct by Connelly concerning disclosure or production of matters not privileged. Should this Court find the disclosure or production of any information, recorded information or item of property is subject to a valid claim of privilege, the trustee will be denied those matters.

The trustee's motion to dismiss must be held in abeyance until this matter is ripe for decision. At this stage, the burden of proceeding rests squarely on Connelly, for his sworn justifications are needed to determine the propriety of his assertions and the future course of these proceedings. Therefore, his noncompliance with the order entered this date and any further order this Court shall enter regarding his Fifth Amendment rights would be subject to sanction, including possible dismissal.

Finally, this Court is cognizant of Congress' intention that a debtor who properly asserts the Fifth Amendment receive his discharge; the constitutional constraints upon imposing a "penalty" for the proper assertion of privilege; and the fact that Connelly can potentially be discharged of his debts here merely because he filed an unsworn list of "creditors" with the clerk

without giving any information regarding the debts involved.[28]

This Court will accordingly employ dismissal solely as a remedial measure of last resort should other less burdensome procedures and remedies employed in this case prove ineffective and proper administration prove to be impossible. But, as previously noted, while the Court must always protect use of the Fifth Amendment as a shield to protect a debtor's rights, a debtor cannot use that privilege as a sword to maintain his case to discharge in Chapter 7 without any disgorgement of his assets or disclosure of information.

## XI. ORDER AS TO FIFTH AMENDMENT ISSUES

Pursuant to the foregoing, it is hereby ordered:

A. The motion of Lawrence Cooper, as Trustee of the estate of Thomas J. Connelly ("Trustee"), to dismiss this case is held in abeyance until such time as it is ripe for decision. That motion will be called without further notice on May 16, 1986, at 11:30 A.M. for report of status of compliance by debtor with this order.

B. The motion of debtor, Thomas J. Connelly, for an order declaring debtor's Fifth Amendment rights under section 521 of the Bankruptcy Code is denied.

C. Debtor Thomas J. Connelly ("Connelly") on or before the aforesaid status date will correct his deficient assertion of Fifth Amendment privilege by the following acts and conduct:

(1) Connelly is ordered to file with the Clerk of this Court, within 21 days hereof, an Amended Schedule of Assets and Liabilities, and an Amended Statement of Financial Affairs for Debtor Not Engaged in Business, and written responses to Trustee's questions heretofore posed at the earlier § 341 meeting of creditors, each personally executed by him under oath. Connelly is ordered to respond to each and every question posed therein that will not subject him to reasonably apprehend danger of self-incrimination. Copies of the foregoing will be served on the Trustee and United States Trustee.

(2) To the extent Connelly responds to any question posed with an asserted claim of Fifth Amendment privilege, he is ordered for each claim so made to file contemporaneously in the chambers of the undersigned Bankruptcy Judge (hereafter *in camera*) his sworn affidavit stating separately for each such question the basis of each claim that responding to a question would cause him to apprehend danger of self-incrimination. Such affidavit shall describe the nature of any pending or potential criminal charges that produce such reasonable fear for each agency that his attorneys said might be conducting investigations, state how the response sought might incriminate him, and be accompanied by any supporting documentary evidence and written argument of counsel.

(3) All submissions filed by Connelly *in camera* shall be sealed within one or more envelopes each bearing the case title and number and marked "FILED UNDER SEAL BY ORDER OF COURT ENTERED MARCH 24, 1986—NOT TO BE OPENED EXCEPT BY LEAVE OF COURT". All such submissions will be received as provided by the July 8, 1983, General Order of this Court adopted for matters filed *in camera*, (a copy of which is attached hereto). The personal staff of the undersigned Bankruptcy Judge will cause all submissions to be docketed according to that Gen-

---

**28.** Bankruptcy Code § 523(a)(3) excepts from discharge any debt *"neither* listed nor scheduled under section 521 of this title ... with name, if known to the debtor, of the creditor to whom such debt is owed[.]" 11 U.S.C. § 523(a)(3). Section 521 requires the debtor file a list of creditors and, unless the court orders otherwise, a schedule of assets and liabilities. Connelly has in compliance with Bankr.Rule 1007(a) filed a list of 29 creditors with his petition. A debt-

ors "debts" or "liability on claims" to creditors with "rights to payment" can be discharged whether or not the "claims" are liquidated or proofs of claim filed. See 11 U.S.C. §§ 101(4)(A), 101(11), 727(a)(10). Thus Connelly could technically be discharged of his debts without listing the amounts of his creditors' claims or other information required by the schedules.

eral Order and shall have authority to retrieve same without further order of Court. The Court will open and review all the submissions tendered by Connelly and determine how to proceed thereon.

(4) Connelly is ordered to reappear within 28 days hereof and to give his sworn testimony at another continued meeting of creditors to be scheduled by Trustee on notice to all creditors, and to be held pursuant to section 341 of the Bankruptcy Code.

(5) At the continued § 341 meeting, the Trustee will pose each and every question to which he seeks a response to Connelly so that a complete and detailed record can be made. Connelly is ordered to respond to each and every question posed by Trustee that will not subject him reasonably to apprehended danger of self-incrimination.

(6) To extent Connelly responds to any question posed to him by Trustee at the continued § 341 meeting with an asserted claim of Fifth Amendment privilege, Trustee will thereafter continue the § 341 examination of Connelly *sine die.* Connelly is ordered to file *in camera* herein with this Court on or before May 5, 1986, his own affidavit stating the basis of each of his sworn statements at the § 341 examination that he reasonably apprehends danger of self-incrimination from responding to a question posed by Trustee; his description of the nature of any pending or potential criminal charges that produce such reasonable fear as to each feared government agency; and his statement as to how the response sought might incriminate him. Such affidavit will be accompanied by any supporting documentary evidence and written argument of counsel. The Trustee shall on or before May 5, 1986, file with the Clerk of the Court a transcript of the continued § 341 examination held and continued by Trustee pursuant to this order, and file a copy with this Court in chambers. This Court will open and review all the submissions tendered by Connelly and the said transcript, and then determine how to proceed thereon.

(7) (a) Connelly is ordered, within 21 days hereof, to surrender to Trustee any and all property of the estate, and any and all recorded information and documents relating to property of the estate unless the act of producing a specific item of property or recorded information could reasonably subject Connelly to reasonably apprehended danger of self-incrimination.

(b) Connelly shall surrender to the Trustee any and all items of recorded information described below because they are not protected by the Fifth Amendment and cannot be a subject of any of his claims of such privilege. Connelly shall surrender or cause to be surrendered such items of recorded information regardless of whether they are in his possession, or that of his counsel or other third party under his control:

(i) Workpapers or other such documents prepared by debtor's accountants or other third parties, which are not the work product of debtor's attorney, and could not be admitted into evidence through debtor's foundation testimony if compelled at trial.

(ii) Records of any collective entity including, but not limited to, corporations and partnerships which debtor possesses in a representative capacity, notwithstanding the incriminating potential of the contents of any such records and including any and all copies of records of Churchfield Management & Investment Corporation.

(iii) Any and all noncorporate or nonpartnership records which the debtor was required to prepare and file by either federal or state law.

(c) Connelly is ordered within 21 days hereof to file with the Clerk of the Court and with this Court, and to serve upon the Trustee and U.S. Trustee a sworn inventory of any and all recorded information, documents, and property surrendered to Trustee in compliance with this Order.

(8) To the extent Connelly withholds any item of property or documents or recorded information from Trustee as provided in

this order, because he reasonably believes surrendering such item could result in testimonial disclosures that might incriminate him, Connelly is ordered within 21 days hereof to file *in camera* his own affidavit specifying in detail every item of property and recorded information withheld from Trustee, and indicating the basis of each claim so made that surrendering the specific item of property or recorded information would be both testimonial and incriminating. Such statements shall describe the nature of any pending or potential criminal charges that produce such reasonable fear as to each government agency feared; state how the act of producing said items might result in incriminating testimony; and be accompanied by any supporting documentary evidence and written argument of counsel, and copies of all documents withheld. Connelly or his counsel shall not, however, submit to this Court as the sole basis for withholding an item of recorded information that the contents of the same might incriminate him. This Court will open and review all the submissions tendered by Connelly and determine how to proceed thereon.

D. It is further ordered, pursuant to said Memorandum Opinion, that the failure of debtor Thomas J. Connelly to comply with the terms of this order may constitute cause to dismiss his Chapter 7 case as permitted by Section 707 of the Bankruptcy Code.

E. Compliance with the foregoing orders by filings *in camera* will not constitute a waiver by the debtor.

### APPENDIX

### GENERAL ORDER

Pursuant to a resolution of the Judges of this Court:

IT IS ORDERED that the following procedures are adopted for handling matters filed *in camera:*

1. The protective order and documents shall be hand-carried to the docketing department.

2. The docket clerk will seal the documents in a court envelope, if this has not already been done. The case number and case title will be written on the envelope as well as the statement "Sealed per order dated (mm-dd-yy)." The order is docketed on the case docket.

3. The original protective order will be placed in the case file folder. A copy of the protective order and the sealed envelope will be hand-carried by docketing personnel to the fiscal department.

4. The documents will be placed in a locked safe within the value in the fiscal department until further order of the Court.

ENTER FOR THE COURT:

/s/ Lawrence Fisher
Lawrence Fisher
Executive Bankruptcy Judge

Dated: February 8, 1983